# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JEROME BOYNTON,

      Petitioner,

v.                                      Case No. 3:16-cv-666-J-32MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

      Respondents.

---

## ORDER

### I. Status

Petitioner, Jerome Boynton, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) along with a Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. 2). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for armed burglary with assault or battery (count one), attempted murder in the second degree with a weapon (count two), child abuse – intentional infliction of physical or mental injury (count four), violation of an injunction for protection against domestic violence (count five), and resisting officer without violence to his or her person (count six).[1] Doc. 1 at 1; see also Resp. Ex. 7. He

---

[1] The state nolle prossed count three when Petitioner entered his negotiated pleas of guilty. See Resp. Ex. 5.

is currently serving a fifteen-year-term of incarceration. Doc. 1 at 1. Respondents filed a Response.[2] See Doc. 14. Petitioner filed a Reply. See Doc. 16. This case is ripe for review.

## II. Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the

---

[2] Attached to the Response are several exhibits. The Court cites to the exhibits as "Resp. Ex."

unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n

unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

4

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.  Analysis

Petitioner raises three grounds for relief, all of which are premised upon claims that trial counsel was ineffective in failing to inform Petitioner of viable defenses before Petitioner entered his pleas of guilty. In Ground One, Petitioner alleges that trial counsel was ineffective for failing to advise him that consent is a valid defense for armed burglary with assault or battery. Doc. 1 at 5. In Ground Two, Petitioner avers that trial counsel was ineffective for failing to advise Petitioner that self-defense

5

is a viable defense for attempted murder in the second degree with a weapon. Id. at 6. Finally, in Ground Three, Petitioner contends that counsel was ineffective for failing to advise him that self-defense was a viable defense to "excuse battery on an unintended victim and that child abuse is a specific intent crime." Id. at 9. According to Petitioner, had trial counsel informed him of these defenses, he would not have entered pleas of guilty.

Petitioner raised these claims in his second amended motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. 12 at 3-9. The trial court denied the claims, addressing them collectively as follows:

> The Court engaged in a full plea dialogue with the Defendant and the Defendant indicated that he was entering his plea with full knowledge and understanding of the nature and consequences of his plea.
>
> Furthermore, the Defendant affirmatively stated that he was satisfied with the services of his attorney. See Transcript, dated February 25, 2013, page 8, which is attached hereto and by reference made a part hereof as Exhibit "B".
>
> The Defendant further acknowledged that he read and understood the Plea of Guilty and Negotiated Sentence Form and that he had signed same. See Transcript, dated February 25, 2013, pages 9 and 10 (Exhibit "B"). Beginning at page 13 of the transcript, the State recites a factual basis to support the plea.
>
> When the Court asked the Defense if there were any exceptions to the factual basis as recited the Defense indicated that there was no forced entry in this case. See Transcript, Page 16, line 10, (Exhibit "B") but rather the factual basis resulted from the Defendant remaining in the home after he was no longer welcome.
>
> Lastly, the Defendant at page 19 of the Transcript

(Exhibit "B") addressed the Court and took *"full responsibility for everything that happened in this case"*. The Defendant further indicates that the situation was something that he just got caught up in and now he had to pay for it.

Based on the foregoing, the Court finds that the Defendant has, in essence, tried to re-litigate the factual basis that supported the plea, despite his acknowledgement that same was true and correct.

The Court further finds that the transcript directly refutes the allegations and the grounds raised in the Defendant's Motion for Post-Conviction Relief.

Resp. Ex. 12 at 15-17. The First District Court of Appeal per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. 15.

To the extent that the First DCA affirmed the circuit court's denial on the merits,[3] the Court will address these claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of these claims.

Nevertheless, assuming the state court's adjudication is not entitled to deference, Petitioner's claims are still without merit. Indeed, even if trial counsel was

---

[3] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

deficient for failing to advise Petitioner of the potential defenses of consent or self-defense, Petitioner cannot demonstrate "a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Specifically, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. at 59-60.

During the plea colloquy, the state presented a factual basis for Petitioner's pleas of guilty. Resp. Ex. 6 at 13-14. The state provided in pertinent part:

> On March 25th, 2012, the defendant, who has a child with a woman by the name of Lemetrius Wanton, went to her residence in the early morning hours, approximately at 3:00 or 4:00 in the morning. He broke into her home while her children were present, attacked her by stabbing her with a knife and proceeded to attack her within her home, picked her up at one point, slammed her down on a glass table in her kitchen, causing numerous injuries to her back, for which she is permanently scarred now, stabbed her several times with about three different knives, breaking one of them inside of her, and she had to be – fortunately, a neighbor downstairs heard the commotion, went upstairs, tried to stop the defendant from doing that. When the defendant did not stop and in fact started attacking her harder, because, failing that, the witness went back downstairs, called 911, or his girlfriend did, and he went back upstairs.

> At that point, I guess, the defendant was tired, he stabbed her enough and decided to leave the residence. He calmly walked across the landing from the victim's apartment, cross the – went downstairs, crossed the yard in the apartment complex, climbed the fence, and from that point proceeded to run from the police.

Ms. Wanton had already obtained a violence – an injunction – I'm sorry – against the defendant because he had battered her on numerous prior occasions and had consistently tried to contact her, and she felt threatened by him, and rightfully so.

Ms. Wanton was stabbed numerous times, was transported to Shands where she had to undergo pretty extensive surgery, which resulted in an appendectomy because of the injuries that were caused to her, as well as leaving her permanent scarring on her groin, the scars obviously from the stabbing to her body, the scars from the glass from the table, as well as the surgery scar that goes from her sternum to below her naval, from having to just recover and be protected from the scars – or the stabbing that the defendant caused.

. . .

The resisting, Your Honor, he ran when the police officers were trying to get him.

As for the factual basis for the child abuse, her 15-year-old son Demetrius was present as well while he was attacking the victim. Demetrius at one point tried to stop the defendant from attacking his mother and came in between the defendant and the victim as he was trying to stab her, and the child got stabbed in the finger. It was a minor, I guess, you know, as far as stabbing goes, pretty minor, but he did have the be treated and received stiches for those.

Id. at 13-15. The trial court then asked trial counsel if there were any exceptions to the factual basis. Id. at 15. In response, trial counsel explained:

We would acknowledge that there were multiple stab wounds. I don't know that there would be a factual basis for multiple knives or that a knife was broken off into the victim's body. To my understanding, from my review of the medical records, there may have been a broken knife recovered in the house, but we're not of the understanding the knife broke off inside the internal organs or inside the victim.

Your Honor, the only other exception I would have at this point in time is . . . that the defendant abandoned the situation because he was tired. I think that would be more speculation as to why he may have left or why he may have discontinued the actions and walked away. I don't know that we would have a factual basis for that.

There would be one other item that I would mention. I guess there were children in the house. They did not become involved with this incident until there was an initial escalation or a physical altercation that broke out between the defendant and the victim.

There were no forced entries in this matter. I believe it was more of a burglary's factual basis is that after a physical altercation broke out between the victim and the defendant, that the defendant remained in the home, although he was no longer welcome in the home, with some intent to commit either an assault or a battery at that point in time.

Those would be the only exceptions the defense would have to the factual basis provided by the state, Your Honor.

Id. at 15-16. Contrary to Petitioner's current claims, the factual basis, read into the record and which Petitioner agreed to under oath, demonstrates that Petitioner's actions were criminal, committed without consent, and that Petitioner did not act

under circumstances representing self-defense.[4] Thus, Petitioner has failed to show that these allegedly viable defenses would have likely succeeded at trial.

Further, Petitioner's own statements at the plea hearing confirm he committed these crimes and that he was entering his pleas voluntarily. See Id. at 19-20. Indeed, Petitioner testified to the following:

> I just wanted to stand before the Court and admit that I take full responsibility for everything that happened in this case . . . . [B]ecause it wouldn't have happened if I hadn't been there, and I just take full responsibility for it . . . .

Resp. Ex. 6 at 19-20. Petitioner was facing a maximum sentence of life in prison for the offense in count one and a thirty-year maximum sentence for the offense in count two. Resp. Ex. 6 at 8; see also §§ 810.02(2)(a), 782.04(2), 775.087(1)(b), 777.04(1), Fla. Stat. (2012). However, in exchange for his negotiated pleas of guilty, Petitioner received concurrent fifteen-year-year terms of incarceration as to count one and count two. Resp. Ex. 7. Accordingly, Petitioner cannot demonstrate that but for counsel's alleged errors, he would not have pled guilty and would have instead proceeded to trial. Petitioner cannot show prejudice under Strickland, and this claim is denied.

---

[4] The Court notes that at the time of his arrest, Petitioner told police that the victim pulled a gun on him as he was entering the victim's apartment. Resp. Ex. 1 at 3. Petitioner also alleged in his Rule 3.850 motion that the victim was in possession of a firearm when he attacked her. Resp. Ex. 12 at 5. However, other than Petitioner's own statements, there is no evidence that the victim threatened Petitioner with a firearm or any other deadly weapon at the time of the offenses. There was no mention of a firearm during the recitation of the plea colloquy, and Petitioner does not reference this alleged firearm in his federal habeas Petition (Doc. 1), his Memorandum in support of his Petition (Doc. 2), or in his Reply (Doc. 16). Thus, the gun appears to be a red herring.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability.  Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[5]

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of April, 2019.


TIMOTHY J. CORRIGAN
United States District Judge

---

[5] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

Jax-7

C:      Jerome Boynton, #855565
        Bryan G. Jordan, Esq.